IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In re

STEFANIE KIM KUEHN,

          Debtor.

- - - - - - - - - - - - - - - - - - - - - - -

CARDINAL STRITCH UNIVERSITY, INC.,

          Plaintiff-Appellant,          OPINION and ORDER

        v.                      07-cv-00368-bbc

STEFANIE KIM KUEHN,

          Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     This is an appeal from a final order of the United States Bankruptcy Court in a contested matter initiated by appellee-debtor, Stefanie Kim Kuehn.  Appellant-creditor Cardinal Stritch University, Inc. contends that the bankruptcy court erred when it granted appellee-debtor's motion for contempt, granted her request for sanctions and relied on evidence that lacked foundation to calculate her damages.  Jurisdiction is present under 28

1

U.S.C. § 158(a).

Debtor filed her original petition for bankruptcy under Chapter 7 in April 2003. In addition to the debts she owed to others, debtor owed creditor money for a two-year master's program that she had attended.  With the debt unpaid, creditor refused to provide debtor a copy of her transcript.  It maintained this position before and during debtor's bankruptcy proceedings and after the debt had been discharged.  When presented with debtor's motion for contempt, the bankruptcy court held that creditor's refusal to give debtor her transcript violated the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362 and the discharge order, 11 U.S.C. § 524.  Because I find that creditor's withholding of debtor's transcript was a coercive "act to collect" the debt she owed and therefore impermissible under §§ 362 and 524, I will affirm the decision of the bankruptcy court.

Next, because I find that creditor was not prejudiced by debtor's delay in bringing this action, I find that the bankruptcy court did not abuse its discretion by awarding sanctions to debtor.  Finally, because I find that the admission of the Sun Prairie School District's salary schedule was not prejudicial to creditor, the bankruptcy court did not abuse its discretion when it relied on the salary schedule to calculate debtor's damages.  Therefore, I will affirm the decision of the bankruptcy court in all respects.

From the record on appeal, I find the following facts solely for the purpose of ruling on creditors' appeal.

2

FACTS

In 1999, debtor Stefanie Kuehn enrolled in a two-year educational leadership master's degree program with creditor Cardinal Stritch University. To pay for the master's degree program, debtor participated in a tuition payment program. Under this program, debtor agreed to pay creditor an initial fee of $1,500 and to make additional monthly payments while she attended classes. Debtor did not receive any financial aid from creditor or any source affiliated with creditor.

After several months, debtor stopped making payments. Thereafter, she was notified that she had been "dropped" from the tuition program. However, debtor continued to enroll in classes, completed the educational requirements and was permitted to graduate from the master's program in 2001.

After debtor graduated, she requested copies of her transcript from creditor. She was informed that there was a "hold" on her transcript and that it would not be released until she paid her tuition. Creditor has a policy of not providing transcripts until a student or former student has paid her financial obligations in full. Creditor sent debtor bills and threatened to turn debtor's account over to a collection agency if she failed to pay in full.

On April 10, 2003, debtor filed a bankruptcy petition under Chapter 7 of the bankruptcy code, listing Cardinal Stritch University as a creditor. Shortly after she filed the petition, debtor contacted creditor, provided it with her bankruptcy filing information and

3

again requested her transcript.  She was told that there was a hold on her transcript and that it would not be released.  Debtor's first bankruptcy attorney wrote several letters to creditor asking it to release debtor's transcript and stating that he believed that its refusal to do so violated the automatic stay provision of the Bankruptcy Code.  Creditor continued to refuse to release the transcript.

The bankruptcy court issued an order discharging debtor's debts. (It appears that debtor's debt to creditor was discharged in a July 21, 2003 order.  However, neither the parties nor the bankruptcy court state this explicitly.)   The case was closed on August 13, 2003.

Debtor's first attorney advised her to continue to pursue the matter of her transcript, but debtor could not afford to do so.  In October 2003, debtor contacted a second attorney about obtaining her transcript.  He wrote a letter to creditor's attorney, in which he stated that it was a violation of the discharge order for creditor to continue to withhold debtor's transcript.  Debtor was unable to afford to pursue the matter any further at that time.

In August 2006, debtor retained her current attorney for the purpose of re-opening her bankruptcy case and obtaining her transcript from creditor.  Debtor's attorney wrote to creditor on September 12, 2006 and requested that it send debtor a copy of her transcript.  Creditor's attorneys replied on October 3, 2006 that creditor was not required to release debtor's transcript.  They further stated that they believed that debtor had waived any right

4

to damages for violation of the automatic stay or the discharge order because she had waited three years to pursue the matter.  Debtor then moved to reopen her bankruptcy case and filed a motion for a finding of contempt, in which she contended that creditor's continued withholding of her transcript violated the court's discharge order.

The bankruptcy court granted debtor's motion to reopen in January 2007 and held a hearing on debtor's contempt motion on May 21, 2007.  At that hearing, the bankruptcy court granted debtor's motion, finding that creditor's withholding of debtor's transcript violated the automatic stay and the discharge order.

Debtor is a public school art teacher in Sun Prairie, Wisconsin.  She receives an annual salary that is determined by her education level and years of teaching experience. Salaries are negotiated annually by the local teachers' union.  Before the Sun Prairie school district will pay a teacher an additional amount for an advanced degree, the teacher must submit a copy of her transcript.   Between 2003 and May 2007, debtor was paid $20,119 less in annual wages than she would have been paid had she been able to submit her master's program transcript to creditor.

OPINION

Creditor raises three issues on appeal.  First, it contends that the bankruptcy court erred as a matter of law when it concluded that creditor's withholding of debtor's transcript

violated the automatic stay and discharge provisions of the bankruptcy code. Next, it contends that the bankruptcy court abused its discretion when it awarded debtor sanctions. Finally, creditor contends that the bankruptcy court's calculation of damages was improper, because the only evidence supporting it was inadmissible.

In reviewing a decision of the bankruptcy court, this court reviews legal conclusions de novo and factual findings for clear error. In re Salem, 465 F.3d 767, 773 (7th Cir. 2006). Evidentiary rulings are reviewed for an abuse of discretion, id. at 779, as are determinations regarding the award of sanctions, In re Rimsat, Ltd., 212 F.3d 1039, 1046 (7th Cir. 2000).

### A. Withholding Debtor's Transcript

Creditor maintains that debtor had no right to receive her transcript and that nothing in the bankruptcy code alters its obligation to provide the transcript to her. It contends that its withholding of debtor's transcript was simply a "consequence" of her failure to pay her debt.

Whether an educational institution may withhold a student's transcript after he has filed a bankruptcy petition on the ground that he has defaulted on his student loans is a question that has arisen with relative regularity in courts around the country. However, this question has not been resolved by the Court of Appeals for the Seventh Circuit and other

courts have reached inconsistent conclusions.  The majority have held that withholding a transcript is an "act to collect" a debt that violates the automatic stay and discharge provisions of the bankruptcy code.  See, e.g., Merchant v. Andrews University, 958 F.2d 738 (6th Cir. 1992); In re Gustafson, 111 B.R. 282 (B.A.P. 9th Cir. 1990), rev'd. on other grounds, 934 F.2d 216 (9th Cir. 1991); In re Heath, 3 B.R. 351 (Bankr. N.D. Ill. 1980); Loyola University v. McClarty, 234 B.R. 386 (E.D. La. 1999).   A minority have found the bankruptcy code does not prohibit a university from withholding a transcript in these circumstances.  E.g., In re Billingsley, 276 B.R. 48 (Bankr. D.N.J. 2002).

It is unnecessary to discuss each of these cases individually, as their reasoning is similar.  Instead, I will discuss several representative cases briefly.  In In re Heath, 3 B.R. at 351, the debtor was a former student who filed a bankruptcy petition under chapter 13 of the bankruptcy code.  Debtor's payment plan provided for repayment of portions of his debt to creditor, but creditor refused to relinquish his transcript until its debt was repaid in full. Id.  Because the bankruptcy court found that the transcript had no independent value to creditor and that its actions were undertaken for "the sole purpose of compelling Heath to pay a prepetition debt," it held that the creditor's withholding of the transcript was an "act to collect" the debt that violated the automatic stay.  Id. at 355.

The Court of Appeals for the Ninth Circuit reached a similar conclusion with respect to a case brought under Chapter 7 of the bankruptcy code in In re Gustafson, 111 B.R. 282.

7

In that case, the court held that the creditor had violated the automatic stay because "withholding of the transcript could serve no other purpose other than to compel the repayment of the debt or reaffirmation of the obligation." Id. at 286-87.  The court rejected the creditor's argument that § 362 does not prohibit "passive" efforts to collect a debt, such as a refusal to release a transcript. Id. at 287.

In contrast, in In re Billingsley, 276 B.R. at 52, the bankruptcy court determined that the proper framework for evaluating debtor's claim was contract, not bankruptcy law, because "the relationship between a university and a student is essentially contractual in nature."  The court held that creditor did not violate any portions of the bankruptcy code when it withheld the debtor's transcript and that Pennsylvania contract law did not provide the debtor a right to her transcript.  Id.

In this case, as in Billingsley, creditor contends that debtor has no state-law property interest in her transcript and that this should be the end of the inquiry because the bankruptcy code does not provide a contrary rule.  Creditor is correct in saying that as a general matter, "state law determines rights and obligations when the [bankruptcy code] does not supply a federal rule."  In re Wright, 492 F.3d 829, 832 (7th Cir. 2007) (citing Butner v. United States, 440 U.S. 48 (1979)).   It is correct also when it points out that outside bankruptcy, debtor would have no right to her transcript until she had made all her tuition payments. But plaintiff was in bankruptcy and she obtained a discharge of her debts,

8

including her debt to creditor.  She no longer owes creditor any money.  On what basis, therefore, can creditor withhold the transcript?  Creditor supplies no good answer.

It is true that no specific provision of the bankruptcy code governs the handling of student transcripts.  Creditor argues that the absence of a rule demonstrates that the filing of a bankruptcy petition and discharge of the underlying debt do not alter a student's entitlement to a transcript in any way.  It contrasts this with the code's inclusion of a rule governing the provision of utility services to a debtor who has filed a bankruptcy petition. See, e.g., 11 U.S.C. § 366 ("[A] utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title . . .").  Creditor contends that, had Congress intended to prohibit the withholding of a transcript, it could and would have included an analogous code provision addressing the issue explicitly.

The mere fact that there is no section of the bankruptcy code that covers this precise situation is not dispositive.  Instead, as the cases discussed above suggest, both the automatic stay, 11 U.S.C. § 362, and discharge provisions of the bankruptcy code, 11 U.S.C. § 524, restrict a creditor's actions with respect to a debtor who has filed a bankruptcy petition.  Both provisions bar a creditor from taking an "act to collect" money it is owed by a debtor.  The automatic stay operates during the pendency of a bankruptcy proceeding; the prohibition on efforts to collect discharged debts takes effect when the bankruptcy court

issues a discharge order.  When these provisions of the bankruptcy code apply, they regularly and dramatically alter contractual relationships.

Therefore, the relevant question is whether withholding a transcript on the ground that a student has not paid her debt in full constitutes an "act to collect" that debt when the student has filed a bankruptcy petition.  If it is, it is prohibited by the bankruptcy code.  If not, the student-debtor is out of luck.  To answer this question, I turn to the code itself.

1.  Automatic stay, 11 U.S.C. § 362

The relevant portion of the bankruptcy code, § 362(a)(6), provides that "a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of . . . any act to collect . . . a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(6).  It provides that the filing of a bankruptcy petition stays creditor action to collect claims against the debtor.

The purpose of the automatic stay is twofold.  First, it promotes the orderly administration of the bankruptcy estate by precluding individual creditors from scrambling to collect their debt.  In addition, the stay provides the debtor with temporary relief from collection efforts.  The United States Supreme Court has described this aspect of the automatic stay as "one of the most fundamental debtor protections provided by the bankruptcy laws."  Midlantic National Bank v. New Jersey Dept. of Environmental

10

Protection, 474 U.S. 494, 503 (1986).

The Court of Appeals for the Seventh Circuit has recognized that the automatic stay protects debtors from both harassment and coercion.  Cox v. Sale Delaware, Inc., 239 F.3d 910, 912 (7th Cir. 2000) (reaffirmation efforts do not violate automatic stay when there is "no coercion or harassment" of debtor); In re Duke, 79 F.3d 43, 46 (7th Cir. 1996) (same). I agree with creditor that its withholding of debtor's transcript did not "harass" debtor.  For example, there is no indication that creditor contacted debtor about her debt when it was not allowed to do so, or that it took any other affirmative step to collect the debt at these times.  Nonetheless, I find that creditor's withholding of debtor's transcript was "an act to collect" its debt because it was highly coercive and unquestionably designed to cause the debtor to pay her debt.

The coercive nature of creditor's refusal to relinquish debtor's transcript is well illustrated.  Although debtor has already attended a master's program, she cannot get a pay raise without proof of her completed course work.  Therefore, each day that debtor does not have her transcript, she loses money.  This is powerful leverage for creditor.

Next, although debtor's transcript has substantial financial value to her, it has limited to no value to creditor.  Presumably, it is currently stored in creditor's paper or electronic filing system, where it has no independent value.  Creditor attempts to demonstrate that the transcript *does* have independent value to it by arguing that its reputation is on the line when

11

it attests to a former student's academic achievements.  However, this argument is tenuous at best.  There is no dispute that debtor completed the necessary course work and met all of creditor's performance requirements. Nor is there evidence that creditor's reputation for turning out well-trained and well-educated students would be harmed in any way if employers and other educational institutions learn that debtor attended its master's program.

Finally, even if I accept creditor's argument that providing debtor's transcript is a separate service, there is no indication that creditor would have refused to provide debtor with this service but for her discharged but unpaid debt.  Instead, creditor's only potential purpose for withholding debtor's transcript appears to be its hope that she will eventually need it badly enough to pay her discharged debt.

2. <u>Discharge, 11 U.S.C. § 542</u>

When a debt is discharged in bankruptcy, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2).  Therefore, the discussion above about the proper characterization of creditor's withholding of debtor's transcript is applicable in this context as well.

In addition, there are serious policy implications in allowing a creditor to continue

to attempt to collect a debt that actually has been discharged.  The discharge provision reflects the bankruptcy code's purpose of providing a debtor a "fresh start."  Creditor's refusal to release debtor's transcript is squarely at odds with this purpose.  If debtor is unsuccessful in this lawsuit, her options are stark:  she must repeat her master's course work elsewhere or pay off her previously discharged debt.  Requiring creditor to turn over debtor's transcript does not, as creditor suggests, allow her to proceed with "more than a fresh start"; it simply allows her to move forward with documentation that she completed her course work.

This is quite different from other situations in which a service provider, such as a lender, refuses to do business with a past customer because she failed to satisfy a debt and instead filed a bankruptcy petition.  Once a student has attended an educational institution, she must rely on it alone to provide her with documentation of her attendance and performance.  She cannot simply ask another institution to provide her with a transcript instead.  Therefore, in this setting, creditor's steadfast refusal to release debtor's transcript in the face of her repeated requests is no less an "act to collect" the debt than sending dunning letters.

Finally, at the hearing before the bankruptcy court, creditor suggested that its contract with debtor was no different from a contract for any other goods and services, App. Record, dkt. #48, at 55, and that requiring it to provide debtor with her transcript was analogous

13

to requiring a seller who had delivered an order of widgets for which it had not been paid to deliver additional widgets.  Id.  However, as discussed above, bankruptcy law often requires results that upset contracting parties' original expectations.   Moreover, and more fundamentally, this analogy is not apt.  Debtor and creditor had a contract regarding the provision of an education.  That contract was completed (even though debtor breached) and debtor's debt for her education was discharged.  Therefore, at this point, that transaction is over.   The transcript is mere *proof* of the transaction; as discussed above, it has no independent value to creditor other than as a collection mechanism.  Thus, in the widget analogy, the transcript is like a receipt or record of title for the widgets, not an additional load of widgets.

## B.  Imposition of Sanctions

_____Next, creditor appears to contend that, even if its withholding of debtor's transcript violated the automatic stay and the discharge order, the bankruptcy court abused its discretion in awarding sanctions to debtor because she did not continue to assert her rights aggressively between 2003 and 2006, when she moved to reopen the case.  Creditor argues that the doctrines of laches, waiver and equitable estoppel bar the award of sanctions to debtor.  (It is not entirely clear from creditor's brief whether these arguments are aimed solely at the bankruptcy court's decision to award sanctions or its finding regarding liability

14

as well.  It does not matter, because the bankruptcy court did not abuse its discretion in rejecting the arguments in full.)

The equitable doctrine of laches bars a party from "sleeping" on its rights.  A party asserting the defense of laches "must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom."  Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 820 (7th Cir. 1999).  Prejudice occurs when a defendant "has changed his position in a way that would not have occurred if the plaintiff had not delayed."  Id. at 824.

The bankruptcy court dismissed creditor's laches argument as "complete folly."  I agree.  Even if creditor could show that debtor's delay in filing a motion to reopen her bankruptcy case was unreasonable, which it has not, creditor has not shown that it changed its position in any way as a result of her suspended communications.  During debtor's original bankruptcy proceeding, creditor was keenly aware of the fact that debtor wanted it to provide her with a copy of her transcript.  Then, after the discharge order was entered, debtor sent creditor a letter stating that she believed it was violating the discharge order by continuing to withhold her transcript.  It borders on the ridiculous to suggest that, after debtor's final letter in 2003, creditor assumed that she no longer wanted her transcript and that it would have provided it to her, had she just asked.  Therefore, the bankruptcy court did not abuse its discretion when it rejected creditor's laches argument.

15

      Creditor fares no better on its two other theories, that debtor waived her rights or is equitably estopped from asserting them.  There is no indication that debtor knowingly or intentionally waived her right to assert a claim against creditor.  Nor is there any evidence that by her silence, debtor communicated in a misleading way to creditor that she did not believe that its withholding of her transcript violated her rights so that she should therefore be equitably estopped from pursuing these rights now.

## C.  Admission of Salary Schedule

At the hearing on the motion for contempt, debtor offered as evidence of her damages a salary schedule from the Sun Prairie School District.  The schedule listed the salaries for school district employees who had master's degrees and those who did not.  The bankruptcy court admitted the salary schedule as an exhibit and relied on it when calculating debtor's damages.

Approximately a week before the hearing, creditor objected to admission of the salary schedule on the ground that it was hearsay and that debtor was not a "qualified witness" who could demonstrate that the salary schedule was a "business record" admissible under Rule 803(6) of the Federal Rules of Evidence.  Then, "minutes" before the hearing began, debtor provided creditor  with an affidavit from a woman who worked in the Human Resources Department of the Sun Prairie School District.  The affidavit was a certification of

16

authenticity under Rule 902(11), which creditor does not deny would have made the salary schedule admissible if it had been provided to it in a timely manner.  However, creditor contends that the affidavit should not have been admitted because debtor did not "provide written notice of that intention [to creditor]" or "make the record and declaration available for inspection sufficiently in advance of [its] offer into evidence to provide [creditor] with a fair opportunity to challenge [it]." Fed. R. Evid. 902(11).  Debtor argues that the salary schedule was admissible under several other rules of evidence.  However, I need not consider them because, even if the salary schedule was admissible only under Rule 902(11), the bankruptcy court did not abuse its discretion in admitting it.

Creditor has failed to show that it suffered any prejudice as a result of the short notice.  Even now creditor provides no reason to believe that the salary schedule was not authentic or that creditor would have had grounds on which to challenge it had it been provided sooner.  In the absence of any suggestion that there were any deficiencies other than the late disclosure of the authenticating affidavit, I cannot conclude that the bankruptcy court abused its discretion in admitting the salary schedule.

ORDER

IT IS ORDERED that the decision of the United States Bankruptcy Court for the Western District of Wisconsin is AFFIRMED.

Entered this 30th day of November, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge